RAMÓN TORRES RAMOS ET AL., Petitioners and Appellants, v. INSULAR BOARD OF ELECTIONS, Respondent and Appellee; JUAN DE LA TORRE ET AL., Interveners and Appellees.

No. 4889. Argued April 1, 1929.—Decided January 17, 1930.

*J. Valldejuli,* for appellants. *James R. Beverley, Attorney General,* and *Tomás Torres Pérez, Assistant Attorney General,* for respondent. *Bolívar Pagán,* for interveners.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

Ramón Torres Ramos, Fernando Mariani, Ramón Casanova, Ramón Rosado, Rafael Suria, Ramón Martínez Tirado, Mariano Olmo, Diego Díaz Camacho and Juan Navarro, applied to the District Court of San Juan for a writ of certiorari directed to the Insular Board of Elections and alleged that the petitioners are qualified voters who voted at the last election in Porto Rico on November 6, 1928, in the Barceloneta precinct, and that at the said election the petitioners were included in the electoral ticket as candidates of the "Alianza Puertorriqueña," the first named for Mayor of Barceloneta and the others for members of the Municipal Assembly of Barceloneta, in opposition to another ticket of the "Socialista Constitucional" Party; that the Insular Board of Elections canvassed the ballots from the whole Island, and as a result of the canvass of votes from Barceloneta the following candidates were proclaimed to have been elected: Juan de la Torre, as mayor, and Luis Molina, Felipe Reyes, Miguel Caballero, Eugenio Collazo, Martín Colón, Acisclo Soler, Lorenzo de Jesús, Fernando Santana and Alfonso de León, as members of the Municipal Assembly of Barceloneta; that when canvassing the votes from polling

place No. 4 of Barceloneta said Insular Board of Elections declared as valid six ballots, which had been marked with identification marks, and awarded them to the socialist candidates; similarly six marked ballots from polling place No. 5, likewise five ballots from polling place No. 7, twenty-seven ballots marked with a double cross from polling place No. 9, five bállots bearing a double cross from polling place No. 11, five ballots from polling place No. 13, and one ballot from polling place No. 15, marked with two crosses, one underneath the torch and another under the elephant, and all of them were awarded to the ''Socialista Constitucional'' Party; that Oscar Chiesa, who represented the ''Alianza Puertorriqueña'' Party as inspector at polling place No. 5 of the Barceloneta precinct, published, two days after the election, in the newspaper ''El Tiempo'', which is an organ of the ''Socialista Constitucional'' Party, an article entitled ''No More Sucking'', which indicated that Chiesa, while exercising his functions as inspector at the said polling place acted in collusion with the ''Socialista Constitucional'' Party representatives, and that at said polling place, where the ''Alianza'' Party had expected to win by 80 votes, it was defeated by 11 votes; that likewise there had been awarded to the ''Socialista Constitucional'' Party by the inspectors at different polling places in the Barceloneta precinct 152 ballots, marked with two crosses, one underneath the torch and the other underneath the elephant, the complaint setting forth in detail the number of such ballots and the polling places where cast; that the decision of the Insular Board of Elections is erroneous and illegal and the plaintiffs were prejudiced thereby; that at polling place No. 15 of Barceloneta irregularities and fraud had been committed, because, according to petitioners' information and belief, over 60 votes actually cast for the ''Alianza'' Party had been awarded to their rival candidates. Upon these allegations they applied for a writ of certiorari directed to the Insular Board of Elections requiring this board to forward the documents

relating to the several polling places named and others of the Barceloneta precinct, and they prayed the court to make a judicial canvass of the votes.

The three judges of the district court met in bank to hear the parties in regard to the propriety of the remedy sought, after issuing the proper summons. The candidates who had been declared elected entered their appearance in due form and they, as well as the respondent board, filed motions to dismiss the petition and quash the writ, with costs against the petitioners. As ground for these motions they alleged lack of facts sufficient to entitle the petitioner to the remedy sought; lack of jurisdiction in the court to set aside the decisions of the board awarding ballots which had been challenged; validity of the ballots marked with two crosses, and lack of power on the part of the Insular Board and the courts to invalidate ballots, which had been declared valid by common agreement of the local poll boards.

On the above motions a decision was rendered, which has been appealed by the petitioners, *in toto,* and by the interveners, as to those portions thereof relating to the award of costs and the retention of the certificates. This last point has already been determined in another decision of this court. (See *Towner* v. *District Court,* 39 P.R.R. 457.)

In its decision the District Court of San Juan, after a careful consideration of the issues raised, dismissed the certiorari petition without special pronouncement of costs.

Of the four errors assigned by the petitioners in their brief on appeal, we will take up first those calling for a shorter discussion and, among these, the third error, which is assigned as follows:

"Third error.—In finding that the allegation of fraud as set forth in the complaint is not sufficient."

The above assignment is closely connected with the fourth, which reads thus:

"Fourth error.—In finding that the fact that a poll inspector

representing the 'Alianza' at the polls had published an article against the party so represented by him is insufficient to raise the presumption of partiality on his part.''

First of all it would seem proper to state here that the remedy by certiorari, which the Election Law authorizes, does not have the scope ascribed to it by the appellants. That remedy has not the same effect as any action for the annulment of particular acts; nor is the claim of the appellants sustained by the adjudicated cases in this jurisdiction.

In the ''proviso'' of section 17 of Act No. 1 of June 18, 1924, annulling section 89 of a previous statute, it is said:

''*And provided, further,* That the result of the canvass of an election as declared by the Insular Board of Elections and published by the General Supervisor of Elections shall be final, unless the same shall be contested by a certiorari or other authorized legal proceeding, . . . . . and a certiorari proceeding in the District Court of San Juan is hereby authorized in such cases.''

Is it meant by the above that the remedy by certiorari has been essentially changed and turned into an ordinary action? We do not find anything in the law expressly so stating, which might be construed in that sense.

Therefore we must hold that any fraud attributed to a poll inspector or judge, and as to which no protest was entered at the time of its commission, or with which the Insular Board of Elections is not connected, either directly or indirectly, is not and can not be, under the statute, a ground for, or the object of, the remedy by certiorari, given against the proceedings of such board in making the canvass.

In any event, from the allegation of fraud contained in the petition herein nothing appears except the conclusion or opinion of the petitioners that ''there was a fraud.'' Such an allegation is insufficient since it does not set forth the act or acts constituting the fraud charged. In this connection, the following extract from the opinion of the district court most aptly covers the point:

''(3) It is true that whenever fraud exists or a serious violation

of the law occurs, the courts may and should intervene; but an allegation of fraud must be clear, concrete and specific. It is not sufficient that fraud be charged in general terms and as a conclusion inferred from mere belief or information. There must be a specific allegation of fact placing the court in a position to determine, admitting the allegation as true, whether fraud has really and in fact been committed. In the petition it is only alleged (paragraph 14) 'that at polling place No. 15 of the election precinct of Barceloneta irregularities and fraud occurred since, according to petitioners' information and belief, although the 'Alianza Puertorriqueña' actually received a majority of 60 votes at the said polling place, instead of its being declared the victor and the sixty votes awarded to it, the said majority was taken from that party and awarded to the 'Socialista Constitucional' Party.'

"But the plaintiffs fail to state the grounds for their belief, or the source of their information, or the acts whereby they were not awarded the votes which, as they claim, gave them a majority. If there was fraud, who committed it? And how was it committed?

"The poll inspectors and clerks are officers duly appointed by the Insular Board upon nomination by the parties taking part in the election. They are presumed to have acted in accordance with the law, and in order to charge them with fraud the commission of the fraudulent act must be specially alleged. They are bound under oath to the faithful performance of this duty, and in the absence of specific allegations, as to the manner in which they failed to perform it, it must be presumed that they discharged it loyally and efficiently. This confidence in the performance of official duty and the experience acquired through repeated success and intermittent failure form the basis of the felicitous working of a democracy. On the other hand, if there was any fraud in the partial canvass made by the poll boards, certiorari is not the proper remedy for determining the question, since such boards are not parties to this proceeding, which only lies to review the acts of the Insular Board of Elections."

It is unnecessary to say anything further, since the above quoted statements are complete and adequate.

The appellants contend that the allegation that, two days after the elections, Rodríguez Chiesa published in a newspaper, which is the organ of those who had been his political adversaries, an article entitled "No More Sucking", shows the existence of fraud, which is inferred from the assumption

that this citizen was already in collusion with the political party opposing the one which nominated him and that he was in a position to commit or allow the fraud. It seems to us that the appellants have gone too far in their conclusions. We do not know at what time there took place in the mind of the said poll inspector of the "Alianza Puertorriqueña" Party the process, which we might call political pathology, of becoming an adversary to those who had nominated him as their representative. But the signs are that if such conversion took place, it was after the election, when the article was published. And this affords no basis for the belief that there had been any fraud; nor shall we allow our imagination to soar in matters where our judgment must rest on the solid ground of the law and the facts.

The third and fourth errors assigned are, therefore, without merit.

The second error is assigned as follows:

"The second error.—In the lower court's holding that the acts of the poll inspectors and clerks could not be reviewed by it."

The court, indeed, so held and acted accordingly. But it did not commit any error in so doing. The certiorari authorized under the section of the law already cited by us is given to review certain acts of the Insular Board of Elections; and, as stated by the court *a quo* in its decision, this court has heretofore laid down the rules to be applied in this connection.

In *Diez de Andino et al.* v. *Insular Board of Elections*, 35 P.R.R. 92, it was said:

"We are inclined to agree with the appellee in the court below that by this writ of certiorari we can only review the things that were done before the board. In the case of People v. Oms. 34 P. R.R. 435, we intimated that perhaps in certain cases oral testimony could generally only clarify what had actually taken place before the board."

The first error assigned is as follows:

"First error.—In finding that the petiton does not state facts sufficient to constitute the cause of action pursued."

In our opinion, the appellants are wrong in the contention, which they stoutly maintain, that what they did was to bring an action to challenge the election. Of course, the certiorari sought by them would in the end grant them something like an election contest. But we do not agree that the two proceedings are identical, or even that the outcome of the certiorari and of an open, straight and direct action to contest an election must necessarily be the same. In certiorari proceedings, the grounds, the procedure, the jurisdiction of the court and the extent of its power of adjudication, are different from those in an ordinary action.

It is true that in the petition it was alleged that the Insular Board had wrongly awarded to the socialist candidates 52 challenged votes, and that the poll inspectors of the Barceloneta precinct had illegally awarded to those candidates 152 ballots marked with a double cross.

As to the action of the poll inspectors who agreed among themselves, and no timely opposition or protest having been entered, no court would have anything to say, in a certiorari proceeding. The poll inspectors of both parties decided in agreement, and we fail to see how such a decision could now be questioned. But apart from this, certiorari does not lie to review the acts of poll inspectors which, in addition, have not been timely challenged. The remedy is given, subject to the limitation provided by law, against the decisions of the Insular Board.

The number of ballots affected having been reduced to the 52 ballots awarded by the Insular Board, let us see how the lower court disposed of the remaining issues. We quote the following from that court's opinion:

"The first ground of review is without merit. If, as stated by the petitioners, the successful candidates were awarded a majority of 121 votes, they would still have a majority of 69 votes after deducting the 52 votes awarded by the Insular Board. A simple

**420**

arithmetical calculation leads us to that conclusion. So that the canvass complained of, made by the Insular Board of Elections, did not change at all the result of the election. The grant of a writ of certiorari to review such canvassing on the part of the respondent would be an idle proceeding, conducing to purely academic results. No practical purpose would be accomplished by its issuance. The remedy by certiorari authorized by the Election Law should be used for the correction of any error of law or irregularity of procedure which may have prejudiced the petitioner; but it does not lie against a decision of the Insular Board of Elections which does not affect or change the result of a canvass made by a poll board.''

We fully agree with the above ruling and, therefore, we find that the error assigned is inexistent.

We may now proceed to decide the appeal of the interveners as to the failure of the lower court to impose costs on the petitioner. This is a matter in regard to which that court had broad discretion, and if the court failed to see sufficient obstinacy, assuming that there was any, to impose costs, it would still be necessary to convince us that it had abused its discretion. We are unable to find any satisfactory showing of such abuse.

The judgment appealed from must be affirmed, except as to the pronouncement thereof relating to the retention of the certificates, which has been determined in another case decided by this court.